UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

*FILED*

*01 FEB -9 AM 11: 59*

*N.D. OF ALABAMA*

| | | |
|---|---|---|
| PATRICIA A. FLEMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-00-S-2847-NE |
| | ) | |
| EARTHGRAIN COMPANY, | ) | |
| | ) | **ENTERED** |
| Defendant. | ) | |

**FEB  9 2001**

**MEMORANDUM OPINION**

This action is before the court on the motion of a non-party,
the State of Alabama Department of Industrial Relations ("the
Department"), asking the court to quash a subpoena *duces tecum*
issued by the defendant, EarthGrain Company.[1]  Upon consideration
of the pleadings, briefs, and the parties' responses to questions

---

[1] The complaint (doc. no. 1) identifies the defendant, in both the caption
and paragraph 6, as "EarthGrain Company." *See also, e.g., id.* ¶ 21 ("Defendant
EarthGrain is vicariously liable....").  Various pleadings subsequently filed by
the parties reference different entities, however.  For example, the report of
the parties' planning meeting (doc. no. 2), <u>and</u>, the subpoena *duces tecum* that
is the subject of this opinion (see Exhibit "C" to the defendant's memorandum of
law in opposition to the Department's motion to quash (doc. no. 10)), both
identify the "Defendants" (plural) as "EARTHGRAINS REFRIGERATED DOUGH PRODUCTS,
INC., *et al.*"  Schizophrenically, the first sentence of that same memorandum
reads, in pertinent part, as follows:  "Comes now the defendant [singular], The
Earthgrains [no upper case 'G' and 's' added to 'grain'] <u>Baking Companies</u>,
Inc.,..." (emphasis supplied).  Finally, the Answer (doc. no. 7) contains a
caption describing the"Defendants" (plural) as "EARTHGRAINS REFRIGERATED DOUGH
PRODUCTS, INC., *et al.*," but states in the title of the pleading and the first
sentence thereof that it is filed on behalf of "Defendant <u>The Earthgrains Company</u>
('Earthgrains')..." (emphasis supplied).

It certainly would be helpful if counsel determined the correct name of the
entity that formerly was the plaintiff's employer, and, amend the complaint (and
title all subsequent pleadings) accordingly.

In fact, such precision in pleading and clarity in advocacy will be of such
aid, benefit, and comfort to this court that an appropriate order to that effect
shall be entered contemporaneously herewith.

posed by this court,[2] the court concludes the motion is due to be granted in part, but also denied in part.

## I. FACTS

Patricia Flemings ("plaintiff") is a female American citizen of African ancestry.  She was employed as a check loader and helper in defendant's "Distribution Department" from May 2, 1997, until on or about November 19, 1999, when she "was given notice that she was to be laid off."[3]

Plaintiff alleges that, while so employed, she was subjected to racial and sexual harassment, disparate treatment because of her race, and retaliation for her opposition to defendant's unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. § 1981.  She also asserts supplemental state law claims of invasion of privacy, intentional infliction of emotion distress, and negligence in the retention, supervision and training of those persons identified as her harassers.

The Department has moved to quash a subpoena *duces tecum* issued by defendant, requesting that the Department produce:

> 1.   Any and all documents regarding any claim or claims for unemployment compensation benefits filed by Patricia A. Flemings, social security number 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.
>
> 2   Any and all documents either sent to Patricia A. Flemings or received from Patricia A. Flemings regarding

---

[2]See the order entered January 19, 2001 (doc. no. 5), directing the parties to file responses to questions posed by this court.

[3]Complaint ¶ 15, at 4.

any claim for unemployment compensations [sic] benefits.

3.   Any tape recordings and/or transcripts of the unemployment compensation hearing for Patricia A. Flemings.[4]

The Department asserts the records sought by defendant are "absolutely privileged and confidential" under an Alabama statute providing that:

> Every employing unit shall keep true and accurate work records containing such information as is necessary for the administration of this chapter.  Such records shall be open to inspection and be subject to being copied by the director [of the Alabama Department of Industrial Relations] or his authorized representatives at any reasonable time and as often as may be necessary. The director, an appeals tribunal, any member of the board of appeals created by the industrial relations law or any authorized representative of the director may require from such employer or employing unit such reports covering persons employed by him or it, or employment, wages, hours, unemployment and related matters as are necessary to the effective administration of this chapter.  _Information thus obtained shall be held confidential_, except to the extent necessary for the proper presentation of the contest of a claim, _and shall not be published or be open to public inspection in any manner revealing the employer's or employing unit's identity_.  Any person violating any provision of this section shall be fined not less than $20.00 nor more than $200.00 or imprisoned for not longer than 30 days or both.  All letters, reports, communications and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter, _shall be absolutely privileged_ and shall not be made the subject matter or basis for any civil action for slander or libel in any court.  The director may cause to be made such summaries, compilations, photographs, duplications or

---

[4]See Exhibit "C" to Defendant's Memorandum of Law in Opposition to the Alabama Department of Industrial Relations' Motion to Quash Subpoena (doc. no. 10).

3

reproductions of any records, reports or transcripts
thereof or canceled benefit payment checks as he may deem
advisable for the effective and economical preservation
of the information contained therein, and such summaries,
compilations, photographs, duplications or reproductions,
duly authenticated, shall be admissible in any proceeding
under this chapter if the original record or records
would have been admissible therein.   The director may
provide   by   regulations   for   the   destruction   or
disposition, after reasonable periods, of any records,
reports, transcripts or reproductions thereof or other
papers in his custody, the preservation of which is no
longer necessary for the establishment of contribution
liability or benefit rights of for any purpose necessary
for the proper administration of this chapter, including
any required audit thereof.

Alabama Code § 25-4-116 (1975) (1992 Replacement Vol.) (emphasis

supplied); *see also id.* §§ 25-2-22,[5] 25-2-25.[6]

---

[5]Ala. Code § 25-2-22 (1975) (1992 Replace. Vol.) provides:

Every employer or owner shall furnish to the Department of
Industrial Relations or the board of appeals any information which
the Department of Industrial Relations or the board of appeals is
authorized to require, and shall make true and specific answers to
all reasonable questions, whether submitted orally or in writing,
authorized to be put to him.  The Director of Industrial Relations
and any authorized representative of the Department of Industrial
Relations shall, for the purpose of examination, have access to and
the right to copy from any book, account, record, payroll, paper or
documents relating to the employment of workers in such manner as
may be reasonable and at reasonable times. Information secured under
the provisions of this section shall not be published or be open to
public inspection in any manner revealing the employer's or owner's
identity; and any officer, member or employee of the Department of
Industrial Relations or the board of appeals guilty of violating
this provision shall be subject to the penalties provided in this
chapter.

[6]Ala. Code § 25-2-25 (1975) (1992 Replace. Vol.) sets forth the penalties
referenced by § 25-2-22, *supra*:

Any person who violates or fails or refuses to comply with any
requirement of this chapter or any lawful rule or regulation of the
board of appeals adopted pursuant thereto, for which no penalty has
been otherwise provided, shall be guilty of a misdemeanor, and upon
conviction thereof shall be fined not less than $ 10.00 nor more
than $100.00 or shall be imprisoned for not more than six months, or
both so fined and imprisoned, for each such offense.  Each day such
violation, omission, failure or refusal continues shall be deemed a
separate offense.  Any person who shall knowingly testify falsely,
under oath, or shall knowingly make, give or produce any false

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Defendant's response to this court's order, requesting that it state "the precise purpose for seeking production of the contested documents from the Department,"[7] states:

> At the present time, counsel's primary purpose is to obtain discovery on all matters relevant to plaintiff's claim that she was discriminated against during her employment with defendant and was terminated for discriminatory, unlawful reasons. <u>The reason for plaintiff's employment separation is at the heart of the Department's inquiry</u>[8] and, thus, documents and materials in the Department's file on plaintiff are relevant, perhaps vital, to Earthgrains' defense in this case. Defense counsel is particularly interested in any documents or materials, including any application, that evidence statements made by plaintiff to the Department regarding her employment with defendant. Counsel is also interested in any documents prepared by the Department that would evidence statements made by plaintiff or determinations made by the Department regarding the reason for plaintiff's separation. ...[9]

---

statement or false evidence under oath to the Director of Industrial Relations, or an officer of the Department of Industrial Relations designated by him or to any member of the board of appeals, shall be guilty of perjury.

[7]Order entered January 19, 2001 (doc. no. 5) at 1.

[8]*Cf.* Mitchell v. Humana Hospital-Shoals, 942 F.2d 1581, 1583 (11th Cir. 1991) ("In Alabama, an employee who resigns without good cause is disqualified from receiving unemployment benefits.") (*citing* Ala.Code § 25-4-78(2)).

[9]Defendant's Memorandum of Law in Opposition to the Alabama Department of Industrial Relations' Motion to Quash Subpoena (doc. no. 10), at 3-4 (emphasis supplied).

.

Plaintiff's response to this court's order of January 19, 2001,[10] demonstrates that such documents do exist.

> 1.   On or about January 6, 2000, the plaintiff, the plaintiff submitted an application for unemployment compensation benefits at the Huntsville, Alabama Office of the Alabama Department of Industrial Relations.
>
> 2.   Shortly thereafter, and before she received any payments, the plaintiff informed her caseworker that she had secured employment and was no longer in need of unemployment compensation benefits.
>
> 3.   Plaintiff's counsel has informed defendant's counsel of the facts surrounding plaintiff's claim for unemployment compensation benefits and is in the process of submitting to them all documents in plaintiff's possession regarding this issue.[11]

The documents sought by defendant thus are relevant to plaintiff's claim that she was terminated because of her race and sex, or because she opposed defendant's alleged unlawful employment practices,[12] but only marginally so, in view of plaintiff's apparent

---

[10]The order required that plaintiff respond to the Department's motion to quash, stating whether, following the date on which her employment with Defendant was terminated, she applied for unemployment compensation benefits and, if so, further stating:

> 1.   the date on which such application was filed; and
>
> 2.   Whether benefits were granted and, if so, the dates upon which the unemployment benefits began and ended; and
>
> 3.   If a hearing was held: the date, time and place of the hearing; the identity of all persons who appeared at the hearing; the identity of the hearing official; the result of the hearing; and, whether a written opinion of decision was rendered and, if so, attaching a copy.

Order of January 19, 2001 (doc. no. 5) at 2.

[11]Plaintiff's response to this court's order regarding plaintiff's application for unemployment compensation benefits (doc. no. 9).

[12]Cf., e.g., Mitchell v. Humana Hospital-Shoals, supra note 13 (discussing collateral estoppel, and the preclusive effect to be accorded an Alabama circuit court decision denying unemployment compensation benefits to a Title VII plaintiff who asserted that her voluntary resignation of employment amounted to

abandonment of her claim for unemployment compensation. The Supreme Court has quite clearly held that decisions of a state administrative agency that have not been judicially reviewed in state court do <u>not</u> have preclusive effect on an employee's Title VII discrimination claims. *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986) ("[W]e conclude that ... Congress did not intend [for judicially] unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *see also Astoria Federal Savings and Loan Association v. Solimino,* 501 U.S. 104, 110, 111 S.Ct 2166, 2171, 115 L.Ed.2d 96 (1991) (judicially unreviewed state administrative findings do <u>not</u> have preclusive effect on a plaintiff's ADEA claim); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n.7, 102 S.Ct. 1883, 1891 n.7, 72 L.Ed.2d 262 (1982) (holding that it was "clear that <u>unreviewed</u> administrative determinations by state agencies ... should <u>not</u> preclude ... review [in federal court] <u>even if such a decision were to be afforded preclusive effect in a State's own courts</u>") (emphasis supplied); *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 647 (11th Cir. 1987) (denying preclusive effect to decisions by a state administrative agency that had not been judicially reviewed in state court in plaintiffs' ADEA action).

Even so, defendant still might utilize statements made by

---

a constructive discharge)

plaintiff in her application for impeachment purposes.  Moreover, contrary to its decisions relating to Title VII claims, the Supreme Court has held that even judicially unreviewed decisions of state administrative agencies do have preclusive effect on claims based upon any of the Reconstruction-era civil rights acts (e.g., 42 U.S.C. §§ 1981, 1983, 1985):

> [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

Elliott, 478 U.S. at 799, 106 S.Ct. at 3226 (quoting United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)) (footnote omitted).  Therefore, it cannot be said that defendant's subpoena is not reasonably calculated to lead to the discovery of relevant, admissible evidence.

Defendant's subpoena nevertheless casts far too wide a net: it is overly broad.  Any applications for unemployment compensation filed by plaintiff prior to the termination of her employment with defendant are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.  Therefore, the Department's motion is due to be granted with respect to information contained in its records for the period prior to November 19, 1999, the date on which plaintiff learned that she was to be laid-off.

8

That is not the end of discussion, however.  The court now must consider the efficacy of the state statutory privilege asserted by the Department with regard to information in its possession relating to plaintiff's application for unemployment compensation following the termination of her employment with defendant on or after November 19, 1999.

Defendant first focuses upon one clause of Alabama Code § 25-4-116 — i.e., "shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court" — and asserts on the basis of such language that the statutory privilege is limited to prohibiting disclosure only in defamation actions.

> Thus, pursuant to the language of the statute, communication to the Department may not be made the basis of any defamation action.  The statute does not, however, create an evidentiary or discovery privilege that would prohibit the Department from disclosing a plaintiff's unemployment compensation records in cases such as this one that do not contain any allegations of libel or slander.  ...[13]

This court is not persuaded.  When the clause seized by defendant is read in the context of the entire section from which it has been ripped, there is no indication the Alabama Legislature intended for documents disclosed in connection with an application for unemployment compensation benefits to be deemed privileged in defamation actions only.

The fundamental question is whether a statutory privilege

---

[13]Defendant's memorandum at 4.

created for the benefit of a state regulatory agency is due respect by federal courts.  That inquiry is guided in the first instance by Federal Rule of Evidence 501, providing that:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, <u>the privilege of a</u> witness, person, government, <u>State</u>, <u>or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience</u>.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501 (emphasis supplied).  Such language clearly establishes that a claim of privilege in a civil action founded upon federal question jurisdiction is to be resolved by an analysis of federal common law.  *See, e.g., Hancock v. Hobbs*, 967 F.2d 462, 466-467 (11th Cir. 1992) (per curiam) (affirming a district court's refusal to give effect to a state psychiatrist-patient privilege in § 1983 action, because "[f]ederal common law does not recognize a psychiatrist-patient privilege," and, it is "the federal law of privilege [which] provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question"); *In re Muscatell*, 93 B.R. 268, 270-71 (Bankr. M.D. Fla. 1988) (refusing to recognize state accountant-client privilege because federal law provides the rule for decision in bankruptcy proceedings); *see also* 3 *Weinstein's Federal Evidence* §

501.02[2][b], at 501-11 (2d ed. 1999) ("[F]ederal law of privilege generally applies in federal questions cases, in which federal law supplies the rule of decision.").

The jurisdiction of this court over the present action principally rests upon 28 U.S.C. §§ 1331,[14] 1343(a)(4),[15] and 42 U.S.C. §2000e-5(f)(3).[16]  This court may assert only supplemental jurisdiction over plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a).  Even as to those claims, however, the Eleventh Circuit has instructed district courts that federal privilege law still controls.  *See, e.g., Hancock*, 967 F.2d at 467 ("We therefore hold that the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, <u>even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege</u>.") (emphasis supplied); *In re International Horizons, Inc.*, 689 F.2d 996, 1003-1005 (11th Cir. 1982) (affirming bankruptcy court's refusal to apply state accountant-client privilege, even though important state interest was involved, because such privilege was not recognized by federal

---

[14]28 U.S.C. § 1331 provides:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[15]28 U.S.C. § 1343(a)(4) provides:  "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights...."

[16]Providing that "[e]ach United States district court ... shall have jurisdiction of actions brought under" Title VII of the Civil Rights Act of 1964, and that "[s]uch an action may be brought in any judicial district in the State in which the unlawful employment action is alleged to have been committed...."

common law).

Accordingly, federal common law determines the force of the state privilege asserted by the Department.

However, the Department has not identified, and this court has not found, any case within the Eleventh and former Fifth Circuits recognizing privileges similar to the one that Alabama Code § 25-4-116 purports to create.

On the other hand, several courts have refused to acknowledge similar state governmental privileges. *See, e.g.*, *American Civil Liberties Union v. Finch*, 638 F.2d 1336, 1342-43 (5th Cir. 1981)[17] (holding in § 1983 action that Fed. R. Evid. 501 did not compel respect for a Mississippi statute making certain sealed documents filed in the state department of archives and history "confidential"); *Fears v. Burris Manufacturing Co.*, 436 F.2d 1357, 1361 & n.3 (5th Cir. 1971) (affirming district court order refusing to quash a subpoena *duces tecum* issued in a Title VII racial discrimination case to the Mississippi Employment Security Commission, even though a state statute similar to the Alabama statute at issue here provided that the records sought "shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the state..."); *Carr v. Monroe manufacturing Co.*, 431 F.2d 384, 388-89

---

[17]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

(5th Cir. 1970) (same); *Sexton v. Poole Truck Lines, Inc.*, 888 F. Supp. 127 (M.D. Ala. 1994) (holding in ADA action that Fed. R. Evid. 501 did not compel respect for Ala. Code § 32-6-43, providing that records received by the Alabama Department of Public Safety "for the purpose of assisting the director [of the Department] in determining whether a person meets the medical, physical or mental standards to be licensed as a driver are ... confidential ... and ... shall not be divulged to any other person, federal, state, or local government or private entity, or used as evidence in any trial...").  *Cf. United States v. Blasi*, 462 F. Supp. 373 (M.D. Ala. 1979) (holding that Fed. R. Evid. 501 did not compel respect for Ala. Code §§ 25-2-22 and 25-4-116 when documents were requested by a federal Grand Jury).

Having reviewed all relevant authorities cited to this court, as well as the former Fifth Circuit's opinion in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1970), this court concludes that the asserted state governmental privilege must give way to the superior national policy of eradicating race- and gender-based discrimination in the workplace.  *Cf. United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").  That is especially true when, as here, the parties

13

entitled to the benefit of the asserted state privilege of confidentially are both before this court.

Moreover, it is worth observing, even if as an aside, that neither the Supreme Court of Alabama, nor the Middle District of Alabama, have found the privilege asserted in § 25-4-116 to be as "absolute" as the Department would have this court construe it. *Ex parte Mardis*, 628 So. 2d 605, 608 (Ala. 1993) (holding that "the record of testimony during an unemployment compensation hearing [and all document or records referenced during such testimonial proceedings] is not privileged information under § 25-4-116"); *Thorne v. Big "D" Discount Auto Parts of Daleville, Inc.*, 92 F.R.D. 55, 58 (M.D. Ala. 1981) (Hobb, J.) (holding that Ala. Code § 25-4-116 did not bar a plaintiff from obtaining a tape recording of an unemployment compensation hearing for use in a Fair Labor Standards Act action against the plaintiff's former employer).[18]

An appropriate order consistent with this memorandum opinion, and limiting the availability and use of those documents ordered disclosed (*see Carr*, 431 F.2d at 390), shall be entered contemporaneously herewith.

DONE this the 9th day of February, 2001.

---

[18]Judge Truman Hobbs did "not reach the issue of whether [the] privilege [created by § 25-4-116] would be given effect in federal court under the conditions set forth in *Garner v. Wofinbarger*, 430 F.2d 1093, 1100 (5th Cir.), *cert denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1970) and *American Civil Liberties Union v. Finch*, 638 F.2d 1336, 1342-1345 (th Cir. 1981)," because of his conclusion that the tape recording of a testimonial hearing "does not come within the statutory privilege." Thorne v. Big "D" Discount Auto Parts, 92 F.R.D. 55, 58 (M.D. Ala. 1981).

United States District Judge